There are really two issues here, both of which we believe justify sending this back and reinstating our second amended complaint. In the first case, we believe that the district court committed reversible error in finding that Mr. Gadbois' claims were barred in the first instance by what was known as the first to file bar. Well, how does your client's claim really differ from what was filed earlier, the claims earlier? They covered pretty much the same area, at least as I read it. I don't – well, in our view, they do not cover the same area, and here's why. The Jank complaint, first of all, there were two complaints in Wisconsin. So there's the Beaders complaint, which had to do with a different entity altogether, which got merged into PharMerica. So we're focusing on the Jank complaint. And the Jank complaint focused on controlled drugs and problems that were particular to the prescriptions of the prescription process for controlled drugs. And the controlled drug regimen deals with, as we said in our briefs, highly addictive, dangerous substances. You're concerned not only about patient care, but about the drugs themselves getting into commerce, being diverted and making their way into the street. They have high value. So you need tight physician control over the dispensing of these drugs. And as a result, it's required that you have a written prescription for these drugs from the treating physician. But didn't Jank also list several non-controlled substances among those included in the scheme? No, and that is not the case. When you compare the complaints, you see at no point in Jank's lawsuit did she focus on a scheme. Say focus. Did she or did she not include some comment about the non-controlled substances? She did include what you might call some comment. Isn't that enough to put one on notice? No. Our case is the Duxbury case, because in Duxbury you made a distinction. You said there can be, in Duxbury I thought the first complaint in Duxbury went much farther than Jank's complaint in terms of making something that might stand as an allegation of fraud. In the Jank complaint, the only reference to non-controlled drugs was some allegations in the end of the complaint, not dealing with any systemic practices, certainly not dealing with anything that might extend beyond the few pharmacies in Wisconsin that Jank was dealing with. And they dealt solely with two things, mistaken identity of a patient. In other words, you delivered the wrong prescription to a patient and you didn't rectify it when you found out about it. And number two, the wrong medication to the patient. In other words, you made a mistake on the prescription. You gave it to the right patient, but the wrong medicine. And then you didn't rectify it. So in no way does her discussion of non-controlled drugs imply anything. A, that there was actually a fraud as opposed to a mistake. B, that it was a fraud scheme, and C, that it was somehow centrally operated, that it might reach into other locations such as Rhode Island or across the country. If all she alleged was mistake and not fraud, how would that be actionable under the FCA? It wasn't. But it never got to that point. The government apparently thought it was. They joined the case. Oh, no, no, no. The government did not join those claims. The government actually only joined her claims with respect to prescriptions of controlled level two, schedule two. That's all the government joined. And she then dismissed the rest of the complaint. She joined in the government's complaint, which only dealt with allegations that there was a fraudulent scheme. Actually, it's hard to say that it was even a fraudulent scheme, but there was fraud at several locations involving a failure to get written prescriptions from physicians for schedule two drugs. There was nothing else that the government joined. There was nothing else that she pursued. So it was just the barest mention, far less than what you had in Duxbury. In Duxbury, as your honors probably recall, the court said that there were actually significant similarities between the two operative complaints. And the problem with the first complaint in Duxbury was a failure to allege a widespread off-label promotion scheme, which the second one did. So basically, you disagree with the district court's finding that there was similarity between your client's claim, later filed claim, and the earlier claims. Absolutely. You found against the arguments that you're making here. Yes, your honor. This is de novo review, and she was incorrect. There were no fact findings, so to speak. It was just a review, at least she was supposed to conduct a side-by-side review of the complaints. And she actually made a second mistake in that she said that Ms. Denk had provided additional information to the government after the filing of the complaint and before the filing of the complaint, which was not part of the complaint,  So she actually made a mistaken finding in her characterization of the two complaints, as well as what she took into account. But if you look at the two complaints, in the Wisconsin action, allegedly, controlled and non-controlled substances were dispensed based on telephone orders from nursing home staff without a valid And the orders were then processed on the company's computer system that predetermined strength, etc. And in your claim, you say dispensed non-controlled substances based on telephone and electronic orders from nursing home staff without a signed prescription, and the order was again entered into the computer system and did exactly the same thing. Your honor, that is not from the Denk complaint. I believe that might be from a characterization of Denk's complaint, but that is not from Denk's complaint. Denk did not allege... So what you're saying to us is that when I go back and look carefully at both complaints, that the district court's findings in this area are in error, and that on de novo review, we should correct that error. That is correct, your honor. You will find when you read the Denk complaint, you will have no clue as to any allegations as to non-controlled substances and the problems of prescriptions with non-controlled substances beyond the mistakes that she identified, which I've alluded to, mistaken identity in four instances, mistaken medicine in four instances. That's all that there was that had to do with non-controlled substances. Now, counsel, unless Judge Dwell has some more questions on that point, before your time goes, I'd like to talk to you about your other argument, which, if we were to accept it, might well moot any dispute about the similarity of the complaints, and that's your request for supplementation of the complaint. My first question is, if you can enlighten me at all as to what appear to be two inconsistent requests that you've made. In your motion to remand, you've asked us to remand this case to the district court so that you may move for supplementation of your complaint based on these after-occurring events, the decision in Kellogg Brown and Root and the settlement in Denks. In your reply brief, you've asked us to order supplementation of your complaint. Which of those remedies are you really seeking? We would prefer, since we believe this court has the power to do that, this court deem the complaint to be supplemented. Well, we have the power to do it, but raw power usually isn't the answer. Most of the case law seems to treat motions to supplement under 15D procedurally, very much the same way as motions to amend under 15A. And in those cases, we almost always give the district court first crack at the motion because there's an element of discretion involved in whether or not, a broad element of discretion, as to whether or not the motion should be allowed. We just did that in a false claims act not a month ago in D'Agostino, where we remanded to the district court to allow it to pass on a 15A motion rather than pass on it directly. So why shouldn't we do that here if indeed we grant you any relief? I think the only thing we would want to make, we would ask, is that the court make clear to the judge that we would have to have the opportunity to indeed supplement the complaint to add the additional facts. Well, you'd have to ask the court for leave to supplement. Right. Right. And, yeah, I mean, if we did that, I assume we would give the district court some guidelines, but it's the district court that has to exercise its discretion because there are arguments both ways on this issue of whether you should be allowed to supplement. I would, well, the reason we would prefer that this court do it is then it's done. But I understand your point, Your Honor, that if it goes back to the district court, then, of course, we would promptly ask the district court to permit us to file a supplemented complaint. And why should you be allowed to have either court consider a supplementation? I mean, the defendants in this case argue that any supplementation, whether it be at our order or at the order of the district court, would be improper. What's your argument for supplementation? Our argument is that, well, first of all, we believe that the KBR case, Halliburton case, the Supreme Court case, opens a playing field right now and gives this court the ability to revisit some of the prior panel decisions among which this court previously held that the first to file bar, which we call the pending claims bar, is jurisdictional. And shortly after the Halliburton case came down, the D.C. Circuit came down with a case saying that in part based on Halliburton it wasn't jurisdictional. Yeah, that's the Heath case. The Heath case. But isn't that more than you have to ask for? It is. I mean, if supplementation is proper, we really don't have to decide whether the first to file bar is jurisdictional or not. So why should we reach out for that issue, particularly since it's already been decided and it would involve us, if we have the authority to do it, revisiting existing precedent? This court doesn't need to reach out and do that. But assuming that this court holds to its prior position that the bar is jurisdictional, then the question becomes what complaint does the court look at to see which is the operative complaint? And our position is that the Facebook case, the Zuckerberg Connect You, is controlling here. And that the Rockwell rule, in a Quitom case in the Supreme Court, mandates that you consider the then existing complaint. And when you look at that, you can see that, first of all, that our second amended complaint, which is the operative complaint here, was not barred because at the time we filed it, the allegations regarding non-controlled medicines no longer existed. At that point, Denk had already abandoned those claims, the mistake claims. She had abandoned them in their entirety. So there was nothing left. Or, if it goes back, we should just be allowed to supplement the complaint, as this court has alluded to in the Connect You case, as something that we can do to cure defects in jurisdiction. Well, what's the argument that we wouldn't do that? You say we would adhere to some prior precedents that suggest that that can't be done? I'm sorry. I'm trying to understand what point you're arguing against. I'm arguing against what the appellee has raised in their briefs, which is that you have to – The time of filing? Yes. But don't our cases that apply that rule, our cases that apply that rule, aren't those only in diversity of citizenship circumstances? Yes, they are. Okay. Or it makes a lot of sense, frankly. Yes. So I'm just bringing up what their position has been in responding to that. So I don't think that there would be – In fairness, there is a fairly recent First Circuit case that states the rule in dictum, in the False Claims Act case, I think. The Cunningham case. Yes. I agree. But it's obviously something that was the subject of a lot of discussion in the ConnectU case and is squarely on point with Rockwell. Thank you, Your Honors. May it please the Court, Jeremy Sternberg on behalf of Farmerica. Your Honors, I'd like to start where the previous discussion just left off, and that's the question of jurisdiction, the question of whether there's anything that opens up the playing field, as Mr. Vogel says, as a result of the Kellogg, Brown, and Root case decided by the Supreme Court in May of this year. The Kellogg, Brown, and Root case says nothing about jurisdiction, says nothing about supplementation or moving to amend. In fact, it's a very, very narrow holding on this issue. What that case held is that a QTAM suit under the False Claims Act ceases to be pending once it is dismissed. And all it held is that a case under the first-to-file bar should be dismissed without prejudice instead of with prejudice. And it exactly affirmed the Fourth Circuit on that point. The Fourth Circuit had held that the first-to-file bar was jurisdictional. It held that the later-filed case should be dismissed without prejudice because the earlier-filed cases arose out of the same essential facts as the later-filed case, and its order was then affirmed by the Supreme Court. There's nothing about the Kellogg, Brown, and Root case that changes the playing field in any way on this issue. And, in fact, Mr. Gadelbach. But the point, Mr. Sternberg, is the motion to supplement, right, the question is whether or not, even if you consider the first-to-file bar jurisdictional, whether or not that in any way interferes with the ability either of this Court or of the District Court to grant supplementation along the lines that the plaintiff has requested. And I submit to you that unless the time-of-filing rule applies to cases of federal subject-matter jurisdiction as opposed to diversity cases, then it doesn't make any difference for purposes of deciding the motion to supplement whether or not the first-to-file rule is jurisdictional. So the ConnectU case that's been discussed was a case in which the original complaint was brought under diversity, and then before any answer or motion to dismiss, the plaintiffs submitted an entirely different complaint with different jurisdictional grounds under, I think, the copyright or the trademark statutes. And as this Court, as you, Judge Selya, wrote, it was as if it had been replaced lock, stock, and barrel. Under the first-to-file bar under the statute, the text of the statute that we're dealing with here talks about an inability to bring an action under the False Claims Act when there's a related action already pending. So the time-of-filing is critical. But you don't seem to dispute, at least in your papers, that at the very least, this case, per Kellogg, Brown, and Rue, should have been dismissed by the District Court without prejudice rather than with prejudice, and that the plaintiff could turn around and file a new action. You don't seem to dispute that. We don't dispute that. Okay. So if the plaintiff could file a new action at the conclusion of these proceedings, it seems to me that the strongest argument for supplementation, if it isn't somehow barred by some rule or doctrine, is that in the interest of efficiency, if the plaintiff can simply file a new action that alleges the same thing, why not let him supplement his present action, all right? And that hopefully moves the case forward quicker because we get that before the court without going through all of the trappings of filing the new action. Now, I realize there may be statute of limitations, implications that have some importance to the litigants, but in terms of efficiency concerns, isn't it more efficient to supplement rather than start a brand-new action? There are efficiency concerns that may go both ways. Part of the problem with that regime, the regime that the Court's question raises, is it does violence to the concept of jurisdiction. There's nothing to supplement. There's nothing to amend. There is no jurisdiction over Mr. Dadwa's claim, case rather, as of the date he filed it. And this Court has dealt with that exact same paradigm in the United States' X. Rel. Heinemann Guta case versus Boston Scientific. The Court said, as the Court alluded to in Calloway, that one assesses jurisdiction on the day of the filing, and that's consistent with the statute here. The text of the statute talks about bringing an action. One can't bring an action if there's a related action already pending. There may be one can argue about different efficiency concepts, but one of the benefits of what the Supreme Court did in Kellogg, Brown, and Root is the one-at-a-time system that it says should exist. Once the earlier file case is dismissed, a new one can be brought or refiled, is that there's a simplicity to it. We've got one at a time. Without that, we've basically got the vitality of the first-to-file bar may be gone. But your interpretation of the interplay between the first-to-file bar and subject matter jurisdiction seems to contradict or at least be designed to undermine what the Supreme Court said in Rockwell, which was an FCA case. Rockwell was an FCA case. It was brought under a different – or the issue was under a different subsection. It was under the public disclosure bar. Rockwell was decided in 2007. Since Rockwell, this court has decided no less than four cases under the first-to-file bar, saying the first-to-file bar is jurisdictional. Moreover, what Rockwell said – But the argument here isn't whether the first-to-file bar is jurisdictional. That's a red herring with all due respect. The argument here is whether or not Rockwell, which seems to say that in an FCA case, you can give a party leave to file an amended pleading, which will then become the pleading which is the test on which the test for jurisdiction will be performed, whether that concept counsels in favor of allowing supplementation in this case. Since 15D and 15A work, if not in pari materi, or at least in pari passu. Your Honor, Rockwell obviously holds that, but Rockwell does it as a jurisdiction-limiting concept, not a jurisdiction-conferring concept. Let me explain. What the court specifically said in Rockwell it was worried about is a plaintiff filing a very narrow, bare-bones complaint and seeking to claim that the plaintiff, the whistleblower in that case, was an original source, was an exception to the public disclosure bar. What the court was worried about and why it thought it was a good idea to allow a jurisdictional analysis based on amended complaints or even in that case the court's pretrial order was to prevent a whistleblower from getting in the door on a very narrow crease and then expanding the complaint, expanding the claims to be things that were in the public, had been publicly disclosed and for which that relator was not an original source. So the concept there is jurisdiction-limiting, not jurisdiction-conferring. And the nature of the public disclosure bar differs from the first-to-file bar. The first-to-file bar has always in this circuit been looked at as of the date of filing. That's the date of jurisdictional significance. Your Honors, in my remaining time I'd like to focus on the substantive aspects of the first-to-file issues, some of the issues that you, Judge Stahl, raised. Mr. Gadbois argues that his case is somehow distinct from the earlier-filed complaints because the earlier-filed complaints don't reference non-controlled medications and they don't allege a corporate-wide scheme. A careful review of the earlier-filed complaints, as you, Judge Stahl, were alluding to, reveals that there are such references to non-controlled medications. In fact, Count 5 of the first-amended complaint is entitled, Federal False Claims Act, Submission of Other False Claims for Payment, Drugs Dispensed to Individuals Without a Prescription. That's at page 186 of the Joint Appendix. And in the body of that count, there's a listing of a number of non-controlled medications, Seroquel, Coumadin, among others, for which Pharmairca is alleged to have billed federal health care programs without a prescription in hand. In the introductory section to the Danck complaint, she also alleges that Pharmairca violated the False Claims Act by seeking, quote, reimbursement for sale of prescription drugs and other pharmaceutical products. That's at Joint Appendix, page 129. Prescription drugs encompass controlled medications and non-controlled medications. So her allegations clearly put the government on notice, both generally as to the alleged scheme involving prescription drugs writ large, which include controlled and non-controlled, and she also identifies a more specific set of conduct dealing specifically with non-controlled medications, such as Seroquel and Coumadin and others. The idea that there was the notion or argument that there were no allegations in the Danck complaint about a corporate-wide scheme are also belied by a review of the earlier filed complaints. She, in fact, uses the term corporate-wide scheme in her complaint. She alleges that Pharmairca facilities corporate-wide dispense medicines without a prescription. She alleges that the Pharmairca corporate compliance personnel were involved in the scheme, and she alleges that the Pharmairca corporate computer system were also involved in the scheme. So those two pillars on which Mr. Gadbois' argument rests, that there were no allegations of non-controlled medications, no allegations of a corporate scheme, really evaporate upon a careful review of the complaint. A side-by-side comparison, which the district court did do here, and her discussion of that is in her opinion, also reveals that even if you took out of the equation the allegations about non-controlled medications, a side-by-side review of the complaints revealed that virtually, I know it's not the test in the circuit to show identity, but there's almost an identity between the allegations. Each complaint alleges that medicines were dispensed based on telephone or fax orders. Each complaint alleges that medicines were dispensed in quantities that were not provided by a prescription. Each complaint alleges that the fraud scheme was to dispense medications without a prescription in hand and bill the federal health care programs, here Medicare Part D and the Medicaid programs. That's the fraud scheme. The overall fraud scheme is dispensing medications without a lawful valid prescription and billing the federal government. And this court has consistently over the years analyzed first-to-file issues based on what is the fraud scheme. Here it's clear the essential elements, the essential facts, the material elements of that fraud scheme were alleged before Mr. Gadwa filed his complaint in November of 2010. And the cases the court has decided, including one last year in 2014, the Wilson v. Bristol Myers case, are exactly consistent with that concept. In Bristol Myers, the allegation was that by both an earlier file and a later file complaint, that the pharmaceutical company had marketed the same drug products off-label in the earlier file complaint for one set of off-label uses and the later file complaint for a different set of off-label uses. And what this court said is that the scheme is to market these medicines off-label. It didn't matter. They were mere details that one scheme alleged certain off-label uses and another later filed one alleged different off-label uses. Here the same result should obtain. The scheme is to dispense prescription medication without a lawful valid prescription and bill government health care programs for those dispenses. Unless the court has any other questions, we'll rest in our briefs and urge that the court affirm the dismissal and specifically that the dismissal be without prejudice.